a Memorandum. — In the vacation previous to this term, to wit: on the 22d of July, 1744, Judge Layton resigned his office of Associate Judge of the State; and the Hon. David Hazzard, of Sussex county, was on the 10th of December, appointed to succeed him.
THIS was an action of covenant on a contract under seal, for the sale and delivery of one thousand cords of oak wood to the defendant, at four dollars and seventy cents a cord, delivered in Philadelphia. The breaches were, the nonpayment for a portion of the wood delivered under the contract, and refusal to accept the residue. The pleas were non est factum, payment, c.
The declaration set out, that "Whereas the plaintiffs were possessed of a large quantity, to wit: one thousand cords of good merchantable oak wood, of a certain quality, to wit: such as they had theretofore chopped on the lands of a certain Caleb S. Layton, and a certain lot which they had chopped in certain woods below Cedar Creek, two hundred cords more or less of which said one thousand cords of wood was then and there seasoned; the defendant afterwards by his certain writing obligatory, sealed, c., and here shown, c., covenanted and agreed with the plaintiffs to buy and receive of the plaintiffs the said one thousand cords of good merchantable oak wood as aforesaid, at the price of $4 70 per cord; and to that end it was then and there agreed upon between, c., in and by the said writing obligatory, that the plaintiffs should deliver to the said Henry May Son, during the year 1842, at Philadelphia, the said *Page 174 
one thousand cords of good merchantable oak wood, that is to say, the said two hundred cords, more or less, of the said wood which was seasoned as aforesaid, early in the spring of the year next, c., and the residue thereof regularly, c., c.; and, in consideration thereof, the defendant covenanted that May Son would receive the wood, and find wharf for the same; and would pay $4 70 per cord, clear, c., and would accept and pay to the plaintiffs their drafts at sixty and ninety days for the said one thousand cords of wood; and that said May Son would pay the purchase money for the same in three different instalments, one-third thereof on the 1st of June, one-third on the 1st of November, and one-third on the 1st of April following. And the plaintiffs relying on said contract, on, c., at sundry times between, c., shipped the said two hundred cords of seasoned wood, being part of the said one thousand cords of good merchantable oak wood as aforesaid, to Philadelphia, and delivered the same to May 
Son; and shipped three hundred other cords, part of said one thousand cords, and delivered to said May Son; and also shipped other large quantities of said wood, part of said one thousand cords, and tendered the same to May Son, which they refused to receive, c.; and that plaintiffs drew several drafts which were not accepted, or paid, c.c."
Plaintiffs gave in evidence the following contract; and, having proved the delivery of certain wood in Philadelphia, and the offer to deliver other wood, which defendant refused to receive, or provide wharf room for; closed their case.
"We have this day bought and engaged of Curry Davis, one thousand cords of good merchantable oak wood, such as they have chopped on Caleb S. Layton's woods, and a certain lot which they have chopped in the woods below Cedar Creek, all to be delivered in Philadelphia this present year; there is about two hundred cords of this wood seasoned, and will be shipped early in the spring; the said Curry 
Davis is to deliver the said wood regularly along through this season, and the said Mays is to receive and find wharf room for the wood as it is delivered to them; and the said Henry May Son is to pay them four dollars and seventy cents, (interlined `clear of wharfage or expense') for each and every cord, till the above amount is filled up; and the said Mays is to pay to Curry Davis" their drafts at sixty or ninety days. We each of us bind ourself under the penalty of $500 for the true complying with the above contract; as witness our hands and seals this the 22d day of Jan. 1842.
The understanding is, the payments are to be made in three different *Page 175 
instalments, viz: one-third the 1st of June, one-third the 1st of November, and the balance the 1st of April, 1843. Our transient or store wood is not to be included in the contract.
 (Signed:) HENRY MAY. [Seal.]
 Witness: JOHN P. POLK, P. F. CAUSEY.
 Layton, for defendant, moved a nonsuit, on the following grounds:
1. For an unexplained interlineation in the body of the instrument sued on of the words "clear of wharfage and expense. (Shep.Touch. 66, ch. 4; 1 Pet. Rep. 364; 2 Phil. Ev.
88; 5 Co. Rep. 23; 1 Chit. Pl. 480; 4 Yeates' Rep. 278.)
[Judge Milligan asked if there was a counterpart. The defendant said yes; but he was not bound to produce it.]
2. For a variance between the deed declared on, and the instrument given in evidence. 1. The declaration states a contract by Henry May: the contract itself is in the plural number "We," meaning Henry May and Jonathan May, trading under the firm of H. May Son. 2. The contract specifies about two hundred cords of wood: the narr., has it two hundred cords, more or less. There is a manifest difference between two hundred cords more or less, and about two hundred cords. 3. The declaration states that May agreed toaccept and pay plaintiffs' drafts: the contract is, that they shall pay the plaintiff's drafts. 4. The declaration states a contract for payment at sixty and ninety days: whereas, the contract offered is to pay by three instalments, in June, November and April, by drafts at sixty and ninety days. 5. The contract was for wood, such as was cut in C. S. Layton's woods: there is no averment that the wood sent was such wood.
If there is a material variance, advantage may be taken of it on a motion for a nonsuit, on the plea of non est factum. (1 Saund. Pl. Ev. 457; 9 East 188; 11 Ibid. 632.)
Houston, contra. — 1st. It does not appear that the interlineation was made after the execution of the deed. The contrary is the fact. And it is too late after the contract is admitted in evidence, to ask a nonsuit for an alteration not proved to be made after execution. The defendant has a counterpart which he refuses to show. 2d. The narr., sets out the contract by its legal effect, and there is no variance.
A majority of the court refused the nonsuit. Judge Harrington *Page 176 
differed on the ground that the contract as alledged was of a purchase of twelve hundred cords of wood, of which two hundred cords more orless, should be seasoned wood; whereas the contract was for one thousand cords of wood, of which about two hundred cords should be seasoned.
 The plaintiffs had a verdict.